FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2025

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICKY S.,[1] | No.  1:25-cv-3003-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Ricky S. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. Plaintiff claims he is

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

unable to work due to lumbar spine degenerative disc disease, seizures, status-post craniotomy, compression fractures at T12 and L2, and Reynaud's disease. Because the ALJ's evaluation of the medical opinions pertaining to Plaintiff's lumbar degenerative disc disease is not supported by substantial evidence, the ALJ erred. This matter is remanded for further proceedings.

## I.     Background

On August 7, 2020, claiming an inability to work due in part to the physical and mental impairments listed above, Plaintiff applied for benefits under Title 2.[3] Plaintiff initially claimed an onset date of August 1, 2014, but later amended the alleged onset date to September 16, 2018.[4]

After the agency denied benefits at the initial and reconsideration stages,[5] ALJ Katherine Weatherly held a telephone hearing in

---

[3] AR 193.

[4] AR 45, 193.

[5] AR 111-115, 117-122.

December 2023, at which Plaintiff and a vocational expert testified.[6]

Plaintiff's counsel argued that for the period between the amended alleged onset date of September 16, 2018, and the date last insured of December 31, 2019, the spinal conditions were disabling.[7] He also argued that there was a brain abscess that resulted from a spider bite.[8]

Plaintiff testified that between September 2018 and December 2019 he lived with his family, consisting of his twin children and their mother.[9] He does not remember if he was driving then or if he was in drug or alcohol rehab, but testified that he last completed the 12th grade.[10] He testified that in that time period he was attending a rehab for the effects of a brain abscess for about 6 weeks until he regained speech.[11]

---

[6] AR 41-69.

[7] AR 46.

[8] *Id.*

[9] AR 47-48.

[10] AR 48.

[11] AR 49.

1
2
3
4
5
6
7
8

Plaintiff testified that he was sober from drugs for twelve to eighteen months and had cut his use of alcohol in the last year but was drinking more in 2018-2019.[12] He said that since 2018 he had not worked, but he had gone and helped his aunt.[13] He last worked in 2014 doing steel framing and electrical fittings.[14] He left that job after he slipped on ice and was injured.[15] Prior to that job, he worked for a glass company and a drywall company, and drove a cab.[16]

9
10
11
12
13

Plaintiff testified that in 2018 his memory was an issue, and that he fell from a seizure and had compression fractures that made it hard for him to sleep other than in a recliner.[17] He said that it is not possible for him to kneel currently, and that in 2018 it was possible for him to

14
15
16
17
18
19
20
21
22
23

---

[12] AR 50.

[13] AR 51.

[14] AR 51.

[15] AR 52.

[16] AR 52-53.

[17] AR 54-55.

kneel but it was difficult.[18] The compression fractures gave him

shooting pain and numbness in his legs that was constant.[19] The pain

was worse with bending, lifting, sitting, or standing and improved with

walking.[20] He was able to tolerate sitting from ten minutes to a half

hour.[21] He said he was not able to pick berries or get firewood because

he would be sore afterward. [22] Plaintiff said he uses an inverter table

and that it helps stretch his back and relieve pain.[23] He said that he

could not lay flat and would at times go to sleep in his car.[24] He said he

---

[18] AR 55.

[19] AR 55-56.

[20] AR 57-58.

[21] AR 58.

[22] AR 58-59.

[23] AR 59-60.

[24] AR 60-61.

was not taking medication other than his seizure medication.[25] He said that at the time he drank to deal with pain.[26]

The ALJ issued a decision denying benefits.[27] The ALJ found Plaintiff's alleged symptoms unsupported by the medical evidence and his activities.[28] As to the medical opinions, the ALJ found:

- The opinions of state agency evaluator Thomas Davenport, MD, to be not persuasive.

- The opinions of state agency evaluator Dorothy Leong, MD, to be persuasive.

- The treating opinions of Charles Buser, MD, to be not persuasive.[29]

As to the sequential disability analysis, the ALJ found:

---

[25] AR 61-62.

[26] AR 62-63.

[27] AR 15-33. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[28] AR 23-24.

[29] AR 25-26.

- Step one: Plaintiff did not engage in substantial gainful activity from September 16, 2018, the alleged onset date through December 31, 2019, his date last insured.

- Step two: Plaintiff had the following medically determinable severe impairments:  lumbar spine degenerative disc disease; seizures; polysubstance use disorder; status-post craniotomy; and superior endplate compression fractures at T12 and L2.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered Listings 11.04, 11.02, and 1.15.

- RFC: Plaintiff has the RFC to perform work at the light level with the following limitations:

  > [Plaintiff] can frequently crouch, kneel, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. [Plaintiff] must avoid concentrated exposure to hazards such as heights and heavy machinery due to his history of seizures.

- Step four: Plaintiff was not capable of performing past relevant work as a framer or construction worker II.

- Step five: Plaintiff is capable of performing work as a routing
  cler, router or marker.[30]

Plaintiff timely requested review of the ALJ's decision by the

Appeals Council.[31] Plaintiff timely requested that this Court review the

denial of disability.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by

substantial evidence or is based on legal error" and such error

impacted the nondisability determination.[32] Substantial evidence is

"more than a mere scintilla but less than a preponderance; it is such

_____

[30] AR 20-27.

[31] AR 188, 1–7.

[32] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

the court may not reverse an ALJ decision due to a harmless error—

one that "is inconsequential to the ultimate nondisability

determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33]

### III.  Analysis

Plaintiff argues the ALJ erred when evaluating the opinions of treating source Dr. Buser, erred in failing to develop the record with neurocognitive testing, and erred in rejecting Plaintiff's subjective complaints.[34] The Commissioner argues the ALJ's findings regarding the medical opinion evidence and Plaintiff's subjective claims are supported by substantial evidence, and that there was no need to

---

[33] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[34] ECF No. 8.

develop the record.[35] As is explained below, the ALJ erred when evaluating the medical opinions of Dr. Buser; on remand, the ALJ is to reevaluate the medical opinions and properly consider Plaintiff's testimony.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by failing to properly consider the supportability and consistency of Dr. Buser's opinions, by focusing her analysis on the evaluation of medical evidence regarding Plaintiff's cognitive impairments, and by failing to consider his spine impairments. The Commissioner argues the ALJ reasonably articulated her reasoning adequately. After considering the medical opinions in question, the medical evidence of record, and the reasons given by the ALJ to discount Dr. Buser's opinions, the Court determines the ALJ's evaluation of the medical opinions of Dr. Buser is not supported by substantial evidence.

---

[35] ECF No. 10.

1.   <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[36] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[37] Supportability and consistency are the most important factors.[38] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[39]

The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations

---

[36] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[37] 20 C.F.R. § 416.920c(c)(1)–(5).

[38] *Id.* § 416.920c(b)(2).

[39] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[40]

2. <u>Dr. Buser's Records and Other Relevant Medical Records and Opinions</u>

A CT-scan of the lumbar spine taken on September 16, 2018, indicated:

marked narrowing of the L5-S1 disc space with degenerative osteosclerosis and spurring along its anterior margins. Alignment of the other lumbar sacral vertebrae is as expected. There are Inferior vertebral endplates discontinuity and central compression deformities of T12 vertebra, minimally of the superior endplate of L1 vertebra and in the central endplate region and anterior vertebral body margin of L2 vertebra.[41]

---

[40] 20 C.F.R. § 416.920c(c)(1)–(2).

[41] AR 1652.

On November 15, 2018, Plaintiff presented to Charles Buser, MD, to establish care.[42] He reported that he had been treated by a primary care provider in Bend, Oregon but had moved back and was hoping to get an MRI of his back and continue physical therapy.[43]  He told Dr. Buser that recently he had been diagnosed with compression fractures of the spine and had been advised to have invasive surgery but did not want surgery, but his back pain and numbness in his lower extremities was worsening.[44] On examination, Dr. Buser found no point tenderness along the thoracic spine but diffuse tenderness to palpation in the lower lumbar area.[45] He referred Plaintiff to a neurologist for a second opinion regarding surgery and ordered an MRI of his spine.[46]

An MRI of the lumber spine taken on December 11, 2018, indicated mild degenerative changes at T12-L1, L1-2, L2-3, L3-4, and

---

[42] AR 1808.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

L4-5, and the following findings at L5-S1: Severe loss of intervertebral disc height and signal, small disc osteophyte complex, moderate facet hypertrophy, no spinal canal stenosis, moderate to severe right and moderate left neural foraminal narrowing, and significant impingement of the exiting right L5 nerve root.[47]

An X-Ray of the thoracic spine taken on December 31, 2018, indicated wedging of T5 and stable T12 and L2 endplate compression fractures.[48]

On August 12, 2020, Plaintiff presented to Dr. Buser with sore throat, vomiting, and diarrhea, and reporting that he had been taking Keppra due to a seizure disorder due to a brain abscess and wished to be weaned off Keppra due to moderate adherence and intermittent breakthrough seizures.[49] Dr. Buser referred Plaintiff to OHSU neurology and ordered an MRI of his brain.[50]

---

[47] AR 39.

[48] AR 1650.

[49] AR 1807.

[50] *Id.*

On February 12, 2021, Plaintiff presented to Dr. Buser for follow-up.[51] Plaintiff reported that he was no longer taking Keppra and would like a referral to OSHU to resume taking it.[52] Plaintiff reported that his back pain was ongoing and could only sleep upright in a chair and had been told he needed fusion surgery.[53] On examination, Plaintiff had a partial foot drop on the right when doing heel walk.[54] Dr. Buser noted that the prior MRI had indicated L5/S1 severe disc space narrowing, endplate changes with spondylosis at the L5/S1 level, moderate right foraminal stenosis.[55] He referred Plaintiff to pain management for conservative alternatives to surgery.[56]

---

[51] AR 1806.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

On March 28, 2022, Plaintiff presented to Dr. Buser for follow-up complaining of worsening back pain.[57] Plaintiff reported that his right foot went numb or even when reclining in a chair and reported sharp pain in his hands and feet.[58] Dr. Buser noted that Plaintiff's hands and feet went white and that he believed Plaintiff had Reynaud's.[59] On examination, Dr. Buser noted obvious pain when shifting positions and tenderness to palpation of the lumbar spine.[60]

On April 28, 2022, Plaintiff presented to Dr. Buser for follow-up.[61] Plaintiff was waiting to have an appointment scheduled for pain management.[62] On May 25, 2022, Plaintiff again presented to Dr. Buser for follow-up.[63] Plaintiff was waiting for his referral to

---

[57] AR 1805.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] AR 1804.

[62] *Id.*

[63] AR 1803.

neurology but wondered if he might be referred to physical therapy due to his continued back pain.[64] His right hand nodule and trigger finger were improving but his back pain continued to worsen over time.[65]

On September 21, 2022, Plaintiff presented to Dr. Buser with complaints that his legs were turning red and painful to touch and that his toes were numb.[66] He reported that his legs get pretty swollen during the day and that he needs to sleep in a recliner at night due to back pain.[67] He also reported that he had not gone to pain management because he was concerned about taking injections and reconsidering whether to have surgery instead because his pain was getting worse with flares even after minimal activity.[68] On examination, there was

---

[64] *Id.*

[65] *Id.*

[66] AR 1801-1802.

[67] AR 1801.

[68] *Id.*

moderate swelling in the right ankle and swelling/rash in his lower extremities.[69]

At a December 21, 2022 appointment, Dr. Buser discussed the result of a December 14, 2022 MRI of Plaintiff's spine.[70] Dr. Buser noted that the MRI showed significant compromise of the exiting nerve roots at the L5/S1 level and recommended a referral for neurosurgery.[71] On examination, Dr. Buser noted tenderness to palpation at the thoracic and lumbar junction and decreased sensation to light touch at the right ankle as well as ongoing Reynaud's phenomena.[72] At a February 8, 2023 appointment, Plaintiff discussed the circulation in his hands and feet as well as prostate issues.[73]

At his October 2, 2023 annual physical, Plaintiff discussed dental issues but reported that he was stable for the last year without

---

[69] *Id.*

[70] AR 1800.

[71] *Id.*

[72] *Id.*

[73] AR 1799.

seizures even after discontinuing his medication and that his back pain was better but his toes remained numb.[74] Plaintiff reported abstinence from alcohol.[75]

On February 8, 2023, Dr. Buser completed a medical source statement.[76] He wrote that he had first seen Plaintiff on November 15, 2018, and last seen her on December 21, 2022.[77] He reported that Plaintiff suffers from a seizure disorder, lumbar radiculopathy, and Reynaud's disease, and that his symptoms included concentration difficulty since onset of seizures, back pain, shooting pain down legs, pins and needles in legs, and hand pain and numbness when exposed to cold.[78] Dr. Buser wrote that a December 2022 MRI showed nerve impingement at L5-S1 and that there was right ankle numbness and weakness on examination; that Plaintiff would need to lie down during

---

[74] AR 1796.

[75] *Id.*

[76] AR 1647-1649.

[77] AR 1647.

[78] *Id.*

the day due to pain, numbness, and fatigue; and that he had been referred to pain management and had no current addictions.[79] Dr. Buser noted that Plaintiff's Reynaud's and lumbar radiculopathy caused pain and were likely progressive.[80]

Dr. Buser wrote that regular work would require sitting, standing, and walking that would exacerbate Plaintiff's pain, that he would likely miss more than 4 days of work a month, that Plaintiff could not do even sedentary work because prolonged sitting would be painful, and that Plaintiff could travel only short distances by subway or bus.[81] Dr. Buser opined that the limitations existed since at least August 1, 2014.[82]

---

[79] *Id.*

[80] *Id.*

[81] AR 1648.

[82] AR 1649.

3.    The ALJ's Consideration of Dr. Buser's Opinions

The ALJ found the opinion of Dr. Buser to be not persuasive.  Her evaluation of Dr. Buser's treatment history and opinion was flawed, however.

The ALJ articulated the following reasoning to support her decision to discount Dr. Buser's opinion:

On February 8, 2023, Charles Buser, M.D., a treating provider, found the claimant would have to lay down during the day for one hour, would be unable to meet the demands of full-time sedentary work, and would be absent four or more days per month. (Ex. 12F). He cited back pain, numbness and weakness in the lower extremities, seizure disorder, and fatigue. Dr. Buser noted the claimantís self-report that he does not think he could work a full day without significant flare requiring days of recovery. He also noted that he saw the claimant on only two occasions, once in November 2018 and another time in December 2022, far after the end of the period at issue, even though he believes the limitations are present since August 2014.

I find the opinion of Dr. Buser not persuasive. In the first place, it is quite concerning that Dr. Buser found these severe limitations present since August 1, 2014. That is nearly four years prior to the date he first saw the claimant, and there is no explanation as to why the limitations would have been present that far back. Second, the period at issue runs from September 16, 2018, through December 31, 2019. This means that Dr. Buser only saw the claimant on one occasion during the period at issue. Thereafter, he referred the claimant to pain management and did not see him again for another four years. He also indicated that the claimant

1

2    was on no medications. These facts are not consistent with
such severe limitations.

3    Finally, and most importantly, the limitations are not
consistent with the record or supported by the evidence.

4    After the claimant's initial hospitalization and treatment,
he made a full recovery. There were only two noted seizures

5    after this time, which coincide with either drug use and/or
failure to take his prescribed medications. There are no

6    findings of abnormalities in mental status, nor any notes
indicating ongoing fatigue or impaired sensation. Rather,

7    examinations show evidence of normal gait, normal
strength, and normal coordination, with no obvious residual

8    effects from the craniotomy. (Ex. 5F/241; 6F/2; 8F/13, 18;
9F/51; 15F/12). Considered alongside the claimant's ability

9    to engage in working on his farm and maintain an active
lifestyle, as well as his admissions of improvement, the

10   limitations are not consistent with the record. (Ex. 9F/8-9;
10F/128). Further, Dr. Buser did not make it clear how the

11   findings he cites would lead to the limitations he identified.
For all these reasons, I find the opinion of Dr. Buser not

12   persuasive.[83]

13

14   Plaintiff argues that the ALJ erred in both her assessment of the

15
supportability factor and the consistency factor.  The Court agrees.
16

17   Initially, the Court notes that the ALJ's reasoning that there was

18   a four-year gap in Dr. Buser's treatment history is erroneous.  Dr.

19   Buser indicated in his medical source statement of February 2023 that

20

21   _____

22   [83] AR 25-26.

23

he first saw Plaintiff in November 2018 and last saw him December 2022.[84] Dr. Buser did not state that he did not see Plaintiff for the intervening four years and in fact the record reflects that Dr. Buser examined and treated Plaintiff on ten visits at the time that he completed the medical source statement.  While the basis of the ALJ's mistake might have been an unintentional misinterpretation of Dr. Buser's statement, it was consequential nonetheless, as the ALJ clearly was in error as to Dr. Buser's familiarity with Plaintiff's medical condition throughout the time period.  This error alone would be reason for remand, but the ALJ also erred in her analysis of the consistency factor.

The ALJ's analysis of Dr. Buser's opined limitations to less than sedentary exertion focuses on the fact that there were no obvious residual effects from Plaintiff's craniotomy.[85]  This focus on the cognitive effects by Plaintiff's brain infection of 2018 fails to consider that Dr. Buser's opined limitations were primarily exertional, rather

---

[84] AR 1647.

[85] AR 26.

than nonexertional in nature, and based not on the effects of his brain abscess but rather on his degenerative disc disease and compressions fractures.[86]

Here, the ALJ failed to consider what was possibly the most crucial evidence in the record relating to Plaintiff's medical condition at the time in question – the December 2018 MRI of the lumbar spine, which showed severe narrowing of the neural foramina and indicated "significant" impingement of the L5 nerve root.[87] The ALJ's failure to consider that objective evidence and its consistency with Dr. Buser's findings of tenderness to palpation, positive straight leg raising, and reduced range of motion was again consequential.

While the ALJ need not cite to and discuss every piece of evidence,[88] the ALJ's failure to discuss this evidence was error.

---

[86] *Id.*

[87] AR 39.

[88] *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record,

The ALJ's supportability evaluation and consistency evaluation are lacking and are not supported by substantial evidence.  The Court concludes that a remand is warranted for the ALJ to properly evaluate Dr. Buser's opinions with due consideration of both the supportability and consistency factors.

**B.    Symptom Reports:  This issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints.  Because the Court has remanded the case with direction that the ALJ re-evaluate the medical opinions and Plaintiff's impairments, the ALJ will be required to re-evaluate Plaintiff's symptom reports.  This issue is therefore moot.

**C.    Failure to Develop:  Plaintiff failed to establish consequential error.**

Plaintiff argues the ALJ failed to properly develop the record with regard to his cognitive impairments.  Plaintiff fails to specify any evidence in the record, however, which indicates that he had residual

_____

the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)).

effects from his 2018 brain abscess.  Without any medical evidence

supporting Plaintiff's allegation that residual impairments persisted,

the ALJ's duty to develop was not triggered.

## D.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted.

The decision whether to remand a case for additional evidence, or

simply to award benefits, is within the discretion of the court."[89] When

the court reverses an ALJ's decision for error, the court "ordinarily

must remand to the agency for further proceedings."[90]

The Court finds that further development is necessary for a

proper disability determination. Here, it is not clear what, if any,

---

[89] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone*

*v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[90] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379

F.3d at  595  ("[T]he proper course, except in rare circumstances, is to

remand to the agency for additional investigation or explanation");

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir.

2014).

additional limitations are to be added to the RFC. As noted above, on remand the ALJ is to properly consider Dr. Buser's medical opinions, Plaintiff's alleged impairments, and Plaintiff's symptom reports.

## IV.   Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—her evaluation of the medical opinions, Plaintiff's impairments, and Plaintiff's subjective complaints.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of July 2025.

_____
EDWARD F. SHEA
Senior United States District Judge